IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | | |
|---|---|---|
| SANTOS CASTRO-MOTA, | ) | Civil Action No. 2:23-cv-1920 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | United States Magistrate Judge |
| | ) | Christopher B. Brown |
| SGT. D. COOK, M. BLOTZER, C/O J. | ) | |
| SUNSERI, and C/O B. | ) | |
| LUSCHKOWSK,[1] | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION ON MOTION TO DISMISS, ECF NO. 25[2]**

**Christopher B. Brown, United States Magistrate Judge**

Plaintiff, Santos Castro-Mota ("Castro-Mota"), proceeding *pro se*, is a state

convicted and sentenced prisoner. ECF No. 19 at 4.[3]  He presently is in temporary

pre-trial federal custody at the Butler County Prison during the pendency of a

separate criminal proceeding in this Court, the United States District Court for the

Western District of Pennsylvania, filed at Criminal No. 2:22-cr-00048.  For purposes

of this case, Castro-Mota is considered a pre-trial federal detainee.  The claims

---

[1]    The Amended Complaint misspelled the surname of this defendant.  Although the case
caption mirrors the Amended Complaint, the Court will use the correct spelling in this opinion. *See*
ECF No. 25 at 1, n.1.

[2]    All parties have consented to full jurisdiction before a United States Magistrate Judge
pursuant to 28 U.S.C. § 636(c).  *See* ECF Nos. 29 and 31.

[3]    The Court takes judicial notice of the docket of the Court of Common Pleas of Bucks County.
*See Commonwealth v. Castro-Mota*, CP-09-CR-0002216-2017, docket publicly available at
https://ujsportal.pacourts.us.

giving rise to this case occurred while Castro-Mota was incarcerated at the Indiana County Jail, prior to his transfer to the Butler County Prison.[4]

Pending is Defendants' Motion to Dismiss, ECF No. 25, to which Castro-Mota has filed a brief in opposition. ECF No. 32. After carefully considering the motion and opposition brief, and the relevant case law, the motion will be granted and all claims against Defendants will be dismissed with prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Additionally, Castro-Mota will not be given leave to amend because such amendment would be futile.

## I.    Factual Background[5]

Defendants are employees of Indiana County employed as prison staff at the Indiana County Jail. According to Castro-Mota's filings, on May 15, 2023, he was instructed by jail officials to gather his legal paperwork from his cell and walk towards a table in the common area where Sgt. D. Cook was located.[6] ECF No. 32 at 2. Sgt. Cook told Castro-Mota to place his legal paperwork on the table for inspection. *Id.* Castro-Mota was then instructed to go to the yard.

---

[4]    It appears Castro-Mota has been transferred and is currently confined at the Butler County Prison. *See* ECF No. 32.

[5]    The factual background is drawn from the allegations in the Amended Complaint and are accepted as true with all reasonable inferences drawn in the light most favorable to Castro-Mota. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 227 (3d Cir. 2008). Further, as Castro-Mota is a prisoner appearing pro se, the Court will treat the additional factual allegations contained in his response to the motion to dismiss as though they were included in the Amended Complaint. *See Baker v. Younkin*, 529 F. App'x 114, 115 n.2 (3d Cir. 2013) (non-precedential) (citing *Lewis v. Att'y Gen. of U.S.*, 878 F.2d 714, 722 (3d Cir. 1989)).

[6]    There is also a reference to incidents on December 15, 2023, and December 19, 2023, but the Amended Complaint has no factual allegations describing these incidents. *See* ECF No. 19 at ¶¶ II.D, IV.C, and VII.A.

From the yard, C/O Brown, not a defendant, escorted Castro-Mota and seven other prisoners to the booking area without their legal paperwork. *Id*. at 3. Castro-Mota and the seven prisoners were scanned for contraband and when no contraband was found, they were escorted to the gym area in their block. *Id*. Eventually the rest of the prisoners on Castro-Mota's block also were scanned for contraband and they too were escorted to the gym area. *Id*. Captain Millard and Sgt. Black, neither of whom is a defendant, arrived and spoke with the corrections officers, including C/O M. Blotzer, about searching the shower area. *Id*.

Castro-Mota personally observed C/O M. Blotzer dismantle the shampoo dispenser in the shower area, where he "pulled a 7-6 inch white piece of plastic in the shape of a rectangle from the dispenser." *Id*. at 3-4. C/O Blotzer proceeded back to Castro-Mota's cell. *Id*. at 4.

Castro-Mota saw C/O Blotzer give the piece of plastic to C/O B. Luschkowski, who was standing in Castro-Mota's cell. *Id*. C/O B. Luschkowski then placed the piece of plastic under Castro-Mota's mattress. Sgt. D. Cook, C/O M. Blotzer, C/O Luschkowski, Sgt. Black, and Cpt. Millard all went inside Castro-Mota's cell. *Id*.

A few minutes later, Sgt. D. Cook opened the gym and instructed the prisoners to "grab legal mail" from the table and to proceed to their bunks. *Id*. at 5. Soon after returning to his cell, Sgt. Black and an unidentified corrections officer came to Castro-Mota's cell and told him plastic contraband and tweezers had been found in his cell. *Id*. Castro-Mota was then handcuffed and escorted to "the hole (SHU)." *Id*.

A disciplinary hearing was held one week later and Castro-Mota was found guilty of possessing contraband and sentenced to 45 days in the hole. *Id*. at 5-6. When Castro-Mota was moved from the hole, his property was returned to him, but his legal paperwork was not among the returned property. *Id*. at 6.

Castro-Mota also claims that while in the hole he requested medical care for a bruise on his arm and pain in his knee. *Id*. He was given Tylenol, which did not alleviate his pain. His requests for further medical care were denied. *Id*. Additionally, without any detail, he asserts he requested medical treatment for injuries to his eye, shoulder, knees, left hand, right finger, and testicle, but the doctor told him "you not have nothing." ECF No. 19 at 5.

## II.    Procedural History

Castro-Mota began this civil rights case on October 30, 2023, by submitting a three-page document to the United States District Court for the Eastern District of Pennsylvania. ECF No. 1. The Clerk's office docketed the submission as a "Complaint." On November 7, 2023, the case was transferred to this Court as the events giving rise to Castro-Mota's claims occurred at the Indiana County Jail. ECF Nos. 3 and 4. The case was administratively closed on November 13, 2023, with instructions for Castro-Mota to either tender the full amount of the filing fee or file a properly completed application to proceed in forma pauperis ("IFP motion"). ECF No. 6.

Two weeks later, Castro-Mota filed an IFP motion, ECF No. 8, which was granted on November 29, 2023, and the case reopened. ECF No. 11. Castro-Mota

was then ordered to resubmit his claims on the Court's approved prisoner complaint form. ECF No. 13.  On February 28, 2024, the Court received Castro-Mota's Amended Complaint, which remains his operative pleading.[7] ECF No. 19.[8]

Castro-Mota contends the basis for jurisdiction is under 42 U.S.C. § 1983, with claims arising under the:

Eigth admedment. Six admendment. (4) admenment. (14) admendment. (4) Blantant violation of Elementary Principal of Human Dignity. (8) Naiver concepts and application of policy use to inflict punishment. (3) unnecessary use Descretionary power 4) Abuse of Discretion (5) Retaliation, Harassment, intimidation (6) Negligence. (7) intentional wrongdoing and steal me All Legal Mail. this is Indiana county Jail

ECF No. 19-1 at 3.  He contends Defendants have stolen his legal paperwork, prohibited his access to the courts, and for 3-1/2 months denied him access to use a telephone to call his family. ECF No. 19 at ¶ D.  He describes the "type of torts" as:

type of torts. (A) intentional torts Assault and Battery (b) False imprisomement. (C) intentional infliction of emotional distress. (d) Damages in FTCA suit. the Discretionary function Exception. see. logue v. u.s. 412. u.s. 521 (1973) or Grayson Wor "Davis v. superintendent.

---

[7]     "In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (citations omitted). "Thus, the most recently filed amended complaint becomes the operative pleading." *Id*. (citation omitted).

[8]     Castro-Mota's Amended Complaint, although filed as one document, consists of three separate and distinct documents, titled "Amended Complaint," ECF No. 19, "Civil Action Complaint," ECF No. 19-1, and "Petition of Federal habeas corpus relief to a state prisoner," ECF No. 19-2, with parts one and two containing claims against the Defendants.  The third part, while defendants are named in the caption, relates only to Castro-Mota's arrest on January 7, 2017, by Bensalem Township patrol officers.  The Court notes Castro-Mota has filed a separate habeas action in this Court which has been opened at Case No. 2:24-cv-1571. It is unclear why, but an exhibit in that matter and the exhibit in the instant case both have an identical "Statement of the Case" in each though different named defendants.  *See* Case No. 2:24-cv-1571.

ECF No. 19-1 at 5. As relief, he seeks monetary damages with "statutory interest." *Id*. at 9.

Rather than filing an Answer to the Amended Complaint, Defendants filed the pending motion to dismiss, ECF No. 25, to which Castro-Mota responded. ECF No. 32. The motion is fully briefed and ripe for consideration.

## III.   Jurisdiction and Venue

The Court has federal question jurisdiction as the federal claims are brought under 42 U.S.C. § 1983, *see* 28 U.S.C. §§ 1331, and supplemental jurisdiction under 28 U.S.C. § 1937. Venue is proper in this district as the events and omissions giving rise to Castro-Mota's claims occurred at the Indiana County Jail, located in Indiana County, Pennsylvania, which is within the territorial boundaries of the United States District Court for the Western District of Pennsylvania. *See* 28 U.S.C. § 118(b).

## IV.   Standard of Review – Fed. R. Civ. P. 12(b)(6)

Defendants move to dismiss Castro-Mota's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). The applicable inquiry under Rule 12(b)(6) is well settled. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), and can be dismissed for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). A defendant has the burden of showing that a complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000) (*holding modified by Simon v.*

*United States*, 341 F.3d 193 (3d Cir. 2003)).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must be dismissed if it merely alleges entitlement to relief without supporting facts. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.'"  *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court need not accept as true "unsupported conclusions and unwarranted inferences[,]" *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000), nor a plaintiff's "bald assertions" or "legal conclusions."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  The court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of their claims – not if they will ultimately prevail. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

Finally, because Castro-Mota is proceeding pro se, the allegations in the Amended Complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  If the Court can reasonably read Castro-Mota's Amended Complaint to state a claim upon which relief can be granted, it will do so despite his failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or

unfamiliarity with pleading requirements.  *See Boag v. MacDougall*, 454 U.S. 364 (1982).  Despite this leniency, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996)).

With these standards in mind, the Court now turns to Castro-Mota's Amended Complaint and the pending motion to dismiss.

## V.    Discussion

In their motion to dismiss, Defendants contend dismissal is warranted for several reasons: (i) the Amended Complaint fails to state colorable constitutional claims; (ii) in the alternative, Defendants are each entitled to qualified immunity; (iii) the Amended Complaint fails to state state-law tort claims; and (iv) the action is frivolous under 28 U.S.C. § 1915(e)(2)(B)(i).[9] ECF No. 25.  Each of these arguments will be addressed in turn.

### A.    Federal Claims Brought Under 42 U.S.C. § 1983

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).  Section 1983 "is not itself a source of substantive rights, but a method for

---

[9]    Because the Court finds the Amended Complaint fails to state a claim under Federal Rule 12(b)(6), there is no need for an analysis under 28 U.S.C. § 1915(e)(2)(B)(i).

vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979).

Although there is not a heightened pleading standard in civil rights cases and liberal standards are to be applied to pro se pleadings, a § 1983 complaint must still comply with the Federal Rules of Civil Procedure, and must contain at least a modicum of factual specificity, identifying the particular conduct of each defendant alleged to have harmed the plaintiff. *See Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006). Without specific allegations that a defendant played a role in depriving the plaintiff of a constitutional right, dismissal is appropriate. *See, e.g.*, *Mearin v. Swartz*, 951 F. Supp. 2d 776, 781-82 (W.D. Pa. 2013) (dismissing claims under Rule 12(b)(6) because the plaintiffs had failed to set forth sufficient facts to establish that certain defendants had played an affirmative part in the alleged Eighth Amendment violation).

### 1.    The facts of the Amended Complaint are insufficient to state a claim for relief for retaliation

Castro-Mota makes passing reference to Defendants retaliating against him. ECF No. 19 at ¶ II.B. It is well settled that "government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Allah v. Seiverling*, 229 F.3d 220, 224–25 (3d Cir. 2000)). In order to state a claim for unlawful retaliation, Castro-Mota must allege: (1) his conduct was

constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him. *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. *Allah,* 229 F.3d at 225 (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). Retaliatory motive can be inferred from either: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link. *Id.* (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

The Amended Complaint provides no details related to any alleged retaliatory conduct by Defendants. For example, the allegations do not detail the protected conduct Castro-Mota engaged in, what the retaliatory conduct was, who retaliated against him, or when the retaliatory conduct occurred. As a result, Castro-Mota's retaliation claim is merely a legal conclusion and will be dismissed for failure to state a claim.

### 2. The facts of the Amended Complaint are insufficient to state a claim for relief for access to the courts

The right of access to the courts derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.[10] "It

---

[10]    The right of access to the courts is an aspect of the First Amendment right to petition. *See McDonald v. Smith*, 472 U.S. 479, 482 (1985). Also, "[t]he constitutional guarantee of due process of

is well-established that prisoners have a fundamental constitutional right of access

to the courts." *Roman v. Jeffes*, 904 F.2d 192, 197 (3d Cir. 1990) (citing *Bounds v.*

*Smith*, 430 U.S. 817 (1977), *abrogated by Lewis v. Casey,* 518 U.S. 343 (1996)).  The

focus of any right of access analysis is whether the defendant's actions denied the

plaintiff adequate, effective, and meaningful access to the courts.  The Court of

Appeals for the Third Circuit has explained:

> [A] denial of access claim is available where the state
> officials "wrongfully and intentionally conceal information
> crucial to a person's ability to obtain redress through the
> courts, and do so for the purpose of frustrating that right,
> and that concealment and the delay engendered by it
> substantially reduce the likelihood of one's obtaining the
> relief to which one is otherwise entitled.

*Gibson v. Superintendent of NJ Dep't of L. & Pub. Safety—Div. of State Police*, 411

F.3d 427, 445 (3d Cir. 2005) (quoting *Est. of Smith v. Marasco*, 318 F.3d 497, 511

(3d Cir. 2003), *overruled on other grounds by Dique v. N.J. State Police*, 603 F.3d

181 (3d Cir. 2010).  In order to establish a denial of access to courts claim, a plaintiff

must show: (1) "they suffered an 'actual injury' in that they lost a chance to pursue

a 'nonfrivolous' or 'arguable' underlying claim"; and (2) they have "no other 'remedy

that may be awarded as recompense' for the lost claim other than in the present

denial of access suit." *Monroe v. Beard*, 36 F.3d 198, 205 (3d Cir. 2008) (quoting

*Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).  The complaint must "describe

the underlying arguable claim well enough to show that it is 'more than mere hope,'

---

law has as a corollary the requirement that prisoners be afforded access to the courts in order to
challenge unlawful convictions and to seek redress for violations of their constitutional rights."
*Procunier v. Martinez*, 416 U.S. 396, 419 (1974), *overruled by Thornburgh v. Abbott*, 490 U.S. 401
(1989).

and it must describe the 'lost remedy.'" *Id.* (quoting *Christopher*, 536 U.S. at 416-17).

According to the Amended Complaint, prison officials violated Castro-Mota's constitutional right of access to the courts. ECF No. 19 at ¶ II.D. This claim, however, is not factually supported. The Amended Complaint contains no allegations which show actual injury or that Castro-Mota lost a chance to pursue a nonfrivolous or arguable underlying claim as a result of any action by any Defendant. As a result, Castro-Mota has failed to plausibly plead that Defendants' conduct has prevented him from pursuing a non-frivolous or meritorious claim. Accordingly, Castro-Mota's claim based on the denial of access to the courts will be dismissed for failure to state a claim.

### 3. The facts of the Amended Complaint are insufficient to state a claim for relief for conditions of confinement[11]

Because Castro-Mota is a pretrial detainee, any challenge to the conditions of his confinement must be analyzed under the Due Process Clause of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."); *Hubbard v. Taylor*, 538 F.3d 229, 231 (3d Cir. 2008) (when "pretrial detainees challenge their conditions of confinement," the

---

[11] A court typically evaluates a prisoner's conditions of confinement claims under the Eighth Amendment's prohibition of cruel and unusual punishment. *Edwards v. Northampton Cnty.*, 663 Fed. Appx. 132, 135 (3d Cir. 2016) (citing *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997)). But the Fourteenth Amendment applies to pretrial detainees' challenges to the conditions of their confinement. *See id.*

Court must consider whether there has been "a violation of the Due Process Clause of the Fourteenth Amendment."); *Bistrian v. Levi*, 696 F.3d 352, 372 (3d Cir. 2012) ("[P]retrial detainees have federally protected liberty interests that are different in kind from those of sentenced inmates.") (internal quotations omitted), *abrogated on other grounds as recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024). "[A] particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." *Andrews v. Harper*, 576 F. Supp. 3d 305, 312 (W.D. Pa. 2021) (quoting *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007)) (citing *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999)).

### a)    Denial of Phone Privileges to Call Family

Castro-Mota claims he was not allowed to make telephone calls to his family for 3-1/2 months. ECF No. 19 at ¶ II.D. To the extent Castro-Mota is contending this violated his constitutional due process rights, such claim is not factually supported. For example, Castro-Mota does not allege that he was denied phone privileges for punishment purposes or unlawful retaliation, and the Amended Complaint does not indicate that any individual Defendant was personally involved in denying Castro-Mota his telephone privileges. Therefore, this claim will be dismissed for failure to state a claim.

### b)    Excessive Force

Next, because Castro-Mota is a pretrial detainee, any claims that he experienced unreasonable excessive force would also be governed by the Fourteenth Amendment's Due Process Clause. *See Robinson v. Danbert,* 673 F. App'x 205, 209 (3d Cir. 2019) (the Fourteenth Amendment "'protects a pretrial detainee from the use of excessive force that amounts to punishment.'") (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 (2015)); *see also Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (stating that the Fourteenth Amendment protects pretrial detainees, in particular, from "the use of excessive force that amounts to punishment."). Again, there are no factual allegations in the Amended Complaint which provide a plausible basis for inferring Castro-Mota faced unwarranted excessive force.

To the extent he is claiming he experienced excessive force during the removal from his cell while handcuffed on May 15, 2023, there are no factual allegations that he was injured during the removal or by the manner of handcuffing or any other allegations from which one could infer unwarranted excessive force was used during the escort to the hole. Because there are no allegations that Defendants used excessive force, this will claim will be dismissed as well for failure to state a claim.

### c)    Issuance of False Misconduct

If Castro-Mota is raising an independent claim that Defendants filed a false misconduct report against him, this claim fails. ECF No. 19 at ¶E.4. The filing of a

false misconduct report without more is not a colorable constitutional claim and the claim, therefore, will be dismissed for failure to state a claim.

### d)    Verbal Harassment

Castro-Mota also claims he was subjected to verbal harassment. ECF No. 19 at ¶¶ II.B and IV.C. Verbal harassment, threatening or offensive language, or gestures by corrections officers which do not come with any other injury do not give rise to a constitutional violation. *See McKay v. U.S. Dep't of Justice*, 2010 WL 4358404, at * 1 n.1 (3d Cir. Nov. 4, 2010). Castro-Mota does not elaborate or explain what the harassment was and he does not identify the actor of such behavior. Nor does he allege the harassment came with any other injury. For these reasons, any claims based on alleged verbal harassment will be dismissed for failure to state a claim.[12]

### 4.    The facts of the Amended Complaint are insufficient to state a claim for relief for deliberate indifference to medical needs

All prisoners have a right to adequate medical care. In *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Id*. at 104 (internal citation omitted). When assessing medical claims by pretrial detainees, courts are

---

[12]    Verbal harassment is also not recognized as an independent civil cause of action in Pennsylvania. *See DeAngelo v. Fortney*, 515 A.2d 594, 596 (Pa. Super. 1986) ("Pennsylvania courts have not heretofore recognized a separate tort of harassment. We decline to do so in the instant case[.]").

to apply the deliberate indifference standard established under the Eighth Amendment but must view the inquiry in the context of the *Bell v. Wolfish* standard, which applies Fourteenth Amendment due process principles rather than the cruel and unusual punishment standard to pretrial detainees. *See Hubbard*, 399 F.3d at 165-66. A claim based on the deprivation of necessary medical care must include factual allegations detailing: (1) a serious medical need[13] and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

Here, even assuming Castro-Mota's medical needs were serious, there are no factual allegations in the Amended Complaint connecting any of the Defendants to Castro-Mota's claims of denial or delay of medical care. Rather, Castro-Mota asserts that an unidentified doctor, who is not a defendant, told him "you not have nothing." ECF No. 19 at 5. For these reasons, this claim will be dismissed for failure to state a claim.

---

[13] "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)) (citation omitted). "A medical need is also serious where the denial of treatment would result in the 'unnecessary and wanton infliction of pain,' *Estelle*, 429 U.S. at 103, or a 'life-long handicap or permanent loss,' *Lanzaro*, 834 F.2d at 347." *Id.*

5. **The facts of the Amended Complaint are insufficient to state a claim for relief under either the Fourth Amendment or Sixth Amendment**

"In *Bell*, the [Supreme] Court analyzed a Fourth Amendment claim under the 'assum[ption] for present purposes that inmates, both convicted prisoners and pretrial detainees, retain some Fourth Amendment rights upon commitment to a corrections facility.'" *Parkell v. Danberg*, 833 F.3d 313, 324 (3d Cir. 2016) (quoting *Bell*, 441 U.S. at 545). "[T]he Fourth Amendment therefore grants inmates a limited right of bodily privacy, subject to reasonable intrusions necessitated by the prison setting." *Parkell*, 833 F.3d at 325.

The factual allegations of the Amended Complaint do not reveal how or why Castro-Mota believes his Fourth Amendment rights were violated. To the extent he may be claiming the body scan conducted incident to the search for contraband constituted an unreasonable search in violation of the Fourth Amendment, there are no factual allegations in the Amended Complaint indicating the scan was unreasonable. Accordingly, this claim will be dismissed for failure to state a claim.

Likewise, any claim relying on the Sixth Amendment will be dismissed for failure to state a claim. First, Castro-Mota does not identify specific events or link those events to any specific individual. And more importantly, the Sixth Amendment is only implicated in criminal matters:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, . . ., and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for

> obtaining witnesses in his favor, and to have the
> Assistance of Counsel for his defense.

U.S. Const. amend. VI.  Accordingly, any claim based on a Sixth Amendment

violation will be dismissed for failure to state a claim.

### 6.    Lack of Personal Involvement

In a Section 1983 action, a plaintiff must show that each and every defendant

was personally involved in depriving him of his rights." *Evancho v. Fisher*, 423 F.3d

347, 353 (3d Cir. 2006).  While C/O J. Sunseri is named in the caption of the

Amended Complaint, the Amended Complaint does not attribute any misconduct –

or, indeed, any conduct at all – to C/O J. Sunseri.  Thus, Defendant Sunseri will be

dismissed from this action for lack of personal involvement.

### 7.    Qualified Immunity

In the alternative, Defendants argue that if any of Castro-Mota's allegations

are considered sufficient to state a colorable constitutional claim, Defendants are

protected by the doctrine of qualified immunity.  Qualified immunity "shields

government officials performing discretionary functions from 42 U.S.C. § 1983

liability." *Downs v. Borough of Jenkintown*, No. Civ. 18-4529, 2019 WL 1383802, at

*9 (E.D. Pa. Mar. 26, 2019) (citing *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185,

192 (3d Cir. 2005)).  That said, qualified immunity does not apply if two conditions

are met.  *Id*.  First, the plaintiff must allege facts that "make out a violation of a

constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  Second, the

"right at issue was 'clearly established' at the time of defendant's alleged

misconduct." *Id*.  "To be clearly established, a right must be sufficiently clear 'that

every reasonable official would have understood that what he is doing violates that right.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012). (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). If officials could disagree regarding the legality of their conduct, then qualified immunity should be recognized. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Even assuming the Amended Complaint sufficiently alleges facts that make out a violation of a constitution right(s), the Court finds Defendants are entitled to qualified immunity because the Amended Complaint is void of any factual allegation connecting any Defendant to any alleged constitutional violation.

### 8.    Leave to Amend

The Court must allow amendment by the plaintiff in a civil rights case brought under § 1983 before dismissing under Rule 12(b)(6), irrespective of whether it is requested, unless doing so would be "inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *see also Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004), *abrogated on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court is aware of these holdings, but finds allowing leave for amendment would be futile.

Defendants' motion to dismiss the Amended Complaint placed Castro-Mota on notice of the deficiencies in the Amended Complaint. Further amendment would be futile because Castro-Mota has had the opportunity to revise his claims to add any missing factual averments, and while additional factual allegations were

included in his opposition to the motion, the Amended Complaint continues to have factual deficiencies.[14]

## B.    The Pennsylvania Political Subdivision Tort Claims Act

The Amended Complaint vaguely states Castro-Mota is attempting to bring state-law claims of negligence, assault and battery, false imprisonment, and intentional infliction of emotional distress. ECF No. 19-1 at 5.  Defendants assert each of them has immunity under Pennsylvania's Political Subdivision Torts Claim Act ("PSTCA"), 42 Pa. Cons. Stat. §§ 8541, *et seq.*, for any asserted negligence claims and no exception applies here.

The PSTCA provides local agencies and their employees governmental immunity from liability for claims of damages on account of an injury to a person or to property and only contains a waiver of this immunity as to nine narrow exceptions. *See* 42 Pa. Cons. Stat. §§ 8542(b)(1)-(9).  These include: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; (8) care, custody or control of animals; or (9) sexual abuse. *Id.*; *see also Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1022 (Pa. Commw. Ct. 2014)

---

[14]    Compounding the factual deficiencies identified above, Castro-Mota did not directly respond to Defendants arguments, although he did seek "to provide greater clarity of facts." ECF No. 32 at 1. "To put it simply:  plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as uncontested." *Lada v. Delaware Cnty. Cmty. Coll.,* No. Civ. A. 08-CV-4754, 2009 WL 3217183, at *10 (E.D. Pa. Sept. 30, 2009).  *See, e.g., Lawson v. Barger*, No. 1:17-97, 2018 WL 6524382, at *3 (W.D. Pa. Oct. 12, 2018), *report and recommendation adopted*, 2018 WL 6523179 (W.D. Pa. Dec. 12, 2018) (plaintiff's failure to address arguments raised in a motion to dismiss warranted inference that plaintiff had abandoned those claims).  While the Court could have granted the motion to dismiss as uncontested, because Castro-Mota is a prisoner proceeding pro se, the Court, in an abundance of caution, decided the motion to dismiss on its merits.

("In order to overcome the defense of governmental immunity, a plaintiff's claims against a local agency must sound in negligence and must fall within one of the eight enumerated exceptions to local agency immunity[.]").  The immunity of the PSTCA extends to employees of a local agency who are liable in their individual capacities for civil damages caused by acts within the scope of their official duties. *Renk v. City of Pittsburgh*, 641 A.2d 289, 292 (Pa. 1994).[15]  Castro-Mota does not allege negligence within any of these enumerated exceptions, and therefore, Defendants are entitled to immunity as to Castro-Mota's negligence claims.  Castro-Mota's negligence claims will be dismissed for failure to state a claim.

The immunity afforded under the PTSCA, however, does not shield employees for "willful misconduct," which is "synonymous with the term 'intentional tort.'" *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006).  *See* 42 Pa. Const. Stat. Ann. § 8550, 8542(a)(2) (if "it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct," immunity will not apply.").  Castro-Mota's claims for assault and battery, false imprisonment, and intentional infliction of emotional distress are intentional torts to which immunity under the PTSCA does not extend.  That said, a careful reading of Castro-Mota's Amended Complaint reveals there are no factual allegations against any Defendant which would rise to the level of actual malice or willful misconduct.  Therefore, Castro-Mota's claims for the state-law intentional

---

[15]    Defendants are Indiana County prison staff and are employed by Indiana County, a "local agency." ECF No. 26 at 12.

tort claims of assault and battery, false imprisonment, and intentional infliction of emotional distress also will be dismissed for failure to state a claim.

## VI. Conclusion

For the above reasons, the motion to dismiss will be granted without leave to amend. All claims against the Defendants will be dismissed with prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). A separate Order follows.


DATED : June 20, 2025

BY THE COURT:

s/Christopher B. Brown
Christopher B. Brown
United States Magistrate Judge

cc:    SANTOS CASTRO-MOTA
       43999
       BUTLER COUNTY PRISON
       202 S. Washington Street
       Butler, PA 16001
       (via U.S. First Class Mail)

       Mary Lou Maierhofer
       Margolis Edelstein
       (via ECF electronic notification)